IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVID LAW | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | C.A. No._____ |
| | § | |
| U.S. DEPARTMENT OF | § | |
| INTERIOR, MINERALS | § | |
| MANAGEMENT SERVICE | § | |
| | § | |
| Defendant | § | |

**COMPLAINT AGAINST U.S. DEPARTMENT OF INTERIOR,
MINERALS MANAGEMENT SERVICE
<u>FOR JUDICIAL REVIEW OF AGENCY DECISION</u>**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiff, David Law ("Law") and pursuant to Rule 3 of the

Federal Rules of Civil Procedure makes this complaint against the U.S. Department

of Interior, Minerals Management Service ("MMS"), and would respectfully show

this Honorable Court as follows:

### <u>I. PARTIES</u>

David Law is the Plaintiff in this matter.

-1-

Defendant U.S. Department of Interior is a Cabinet-level agency that manages natural and cultural resources. The Department of Interior overseas the Mineral Management Service's operations.

The Department of Interior may be served with process through the United States Attorney General, Eric Holder, located at U.S. Department of Justice, 10th and Constitutional Avenue, N.W., Washington, D.C. 20530.

Defendant Minerals Management Service ("MMS") is a bureau in the U.S. Department of the Interior and is the Federal agency that manages the nation's natural gas, oil and other mineral resources on the outer continental shelf ("OCS").

The MMS may be served with process through United States Attorney, Jose Angel Moreno, located at 919 Milam, Suite 1500, Houston, Texas 77002.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter because this action arises under a federal statute, the Administrative Procedure Act, U.S.C. § 701 et seq. The material facts, circumstances and transactions occurred in the Southern District of Texas. The underlying suit is in the Southern District of Texas.

## III. BACKGROUND FACTS

In a pending state court lawsuit in Galveston County, Texas, David Law is being sued by Forest Oil Corporation ("Forest") and its insurance-defense attorneys -

the very people who David Law alleges told him "we represent you" before preparing and presenting David Law to be interviewed by federal officers as part of a federal agency investigation of an offshore fatality. As a result of the deception David Law claims the Forest insurance legal team committed on him, Law has counter-sued Forest and its insurers in the same state court suit.

Because the interviewing federal officers were present when Forest's attorneys represented Law, they are vital fact witnesses in the state court suit, and Law prays that this complaint results in the taking of the agents' depositions. Specifically, Law seeks an order compelling the depositions of federal agents David Dykes, Richard Clingan, and Frank Patton.

This complaint arises from the state-court suit Cause No. 07cv1211, Forest Oil Corporation, et al vs. Drilling & Completion Supervisors Inc., and David Law, et al.; in the 56th Judicial District, District Court of Galveston County ("the State Court Suit"). In the State Court Suit, David Law has been sued individually by Forest and wrongful death claimants who intervened in that suit, based on Law's involvement in a plug and abandonment project performed on an offshore oil well (owned and operated by Forest at the material time) known as High Island 466B-11 ("the B-11 well") on which decedent Marion Yeager, Jr. was killed on February 20, 2006 ("the Incident").

During the B-11 project, Yeager was an employee of a plug and abandonment contractor-company named Twachtman, Snyder & Byrd ("TSB"). Law worked inside Forest's Lafayette offices as a consultant under the direction of a Forest employee named Don Sparling.

In the State Court Suit, Law has identified himself to that Court as a borrowed servant and/or vice-principal for Forest, that is, the legal equivalent of a Forest employee. The facts supporting his status are numerous including, to name a few, on the B-11 job, Law performed the non-delegable duties of Forest as imposed by federal regulations for offshore oil platform operations; Forest issued Law a Forest email address to use for communicating with others on Forest projects; Forest assigned Law to an office inside Forest's Lafayette office building; Forest required Law to obtain approval from specific Forest employees for the details of Law's work (managing and directing offshore plug and abandonment activities, hiring and firing offshore platform workers, etc.); and Law was never compensated for his work on the B-11 job and Forest never paid for such services. Not surprisingly, many witnesses have referred to Law as a Forest employee in depositions and other printed materials.

Following the Incident, the MMS investigated[1] the project and fatality by, among other things, interviewing witnesses and individuals who worked on the project.  David Dykes, Richard Clingan and possibly Frank Patton from the MMS interviewed David Law on or about April 12, 2006.  Also in attendance during Law's interrogation were Forest's attorneys Michael Golemi and John Weathington,[2] one or more employees of TSB, and counsel for TSB Matthew Ammerman.  Prior to Law's interrogation, Golemi and Weathington met with Law and other Forest employees to prepare those witnesses.  During the MMS interrogation, everyone present was allowed to interrogate Law, including Golemi, Weathington, MMS officers and counsel for TSB.

Prior to that date, Dykes, Clingan and Patton communicated via email messages with Forest's attorney Cristin Bracken (Cristin Cracraft as indicated in these communications prior to her recent marriage) regarding planning for witness interviews, including which witnesses Forest would present for interrogation by MMS officers.  Specifically, Bracken identified Mariner as Law's new employer (and

---

[1]     The MMS is required to investigate and prepare a public report of incidents like the one here, pursuant to 43 U.S.C. 1348(d)(1), (2)(f) [Outer Continental Shelf (OCS) Lands Act, as amended] and Department of the Interior regulations 30 C.F.R. § 250.

[2]     Weathington was an in-house attorney for Mariner Energy.  Mariner purchased the B-11 well in a transaction that was completed around the same time as the February 20 accident.  In that transaction, Mariner assumed Forest's liabilities.  As a result, Mariner took over the responsibility for claims arising from the February 20 incident within a few weeks after it occurred.  The parties in the State Court Suit refer to Mariner and Forest interchangeably for purposes of responsibility and liability with respect to the B-11 well.

indirectly Forest as Law's former employer) in communicating with Dykes, Clingan and Patton.  Unfortunately, the content of the verbal communications that led to and surrounded the cryptic emails are uncertain.  In fact, Bracken has admitted that her copy of those emails were destroyed.[3]  Fortunately, David Law kept a copy of a few of those email communications.  Everyone interrogated by the MMS was represented by legal counsel during the interrogation.  In the State Court Suit, however, the Forest legal team is attempting to disclaim its representation of Law in order to sue him individually to recover damages representing the amount Forest and its insurers paid to settle the claims of the heirs of Marion Yeager.

After the witness interrogation by MMS officers and attorneys for various parties, the first lawsuit was filed by the wrongful death claimants against Forest:  Cause No. 3:06-CV-00460; Dana Michelle Johnston, et al. v. Forest Oil Corporation, et al.; U.S. District Court Galveston Division ("the Federal Court Suit").  The parties to the Federal Court Suit settled that suit in the amount of $2,575,000 paid on behalf of Forest to the wrongful death claimants (i.e., the Intervenors in the current State Court Suit).  In the State Court Suit, Forest seeks reimbursement of that settlement

---

[3]     Bracken testified in a deposition taken on March 10, 2010 in Denver, Colorado.  She testified that she kept emails she believed to be relevant and all others were deleted.  She does not recall whether she sent a document hold notice in this case, although her usual practice is to send a document hold notice to all Forest employees involved requesting them to respond with their related communications and documents.  In the State Court Suit, Forest has produced no document hold notice and no response to same despite the overruling of Forest's claimed attorney-client privilege.

amount and the wrongful death claimants seek additional and unlimited damages from Law individually.

Some of the above facts as to the representations made to the MMS officers by Forest's attorneys were recently discovered from attorney-client communications that occurred during the Federal Court Suit.  On February 9, 2009 the Honorable Lonnie Cox, the judge assigned to the State Court Suit, ordered Forest and its insurers to produce over 3,000 pages of attorney-client communications related to the Incident and resulting Federal Court Suit pursuant to Law's motion to compel same based on two key arguments: (1) an attorney-client relationship existed between Forest's attorneys and Law; and/or (2) Forest's attorneys deceived Law.  Forest and its insurers resisted production of those materials via repeated mandamus proceedings. The First Court of Appeals and later the Texas Supreme Court affirmed the trial court's decision and ordered the documents produced without qualification as recently as January 15, 2010.

David Law has made repeated requests for depositions of the relevant MMS investigators.  See Exhibits A, B, C.  The MMS, through its counsel, has refused the deposition requests citing a desire to avoid providing expert witness testimony.  See Exhibit D.  As indicated above, these witnesses are vital fact witnesses in the State Court Suit.

## IV.  CAUSES OF ACTION

In order to secure judicial review of a federal agency's determination prohibiting cooperation by officers or agents with deposition requests, a plaintiff is required to commence an action via a complaint under the Administrative Procedure Act (APA).  5 U.S.C. § 701 et seq.; See Chen v. Ho, 368 F.Supp.2d 97, 99 (D.D.C. 2005).

Under the APA, a person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review. 5 U.S.C. § 702.

Further, under APA, 5 U.S.C. 704, to the extent necessary to the decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall:

(1)  compel agency action unlawfully withheld or unreasonably delayed; and

(2)  hold unlawful and set aside agency action, findings, and conclusions found to be--

    (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B)  contrary to constitutional right, power, privilege, or immunity;

     (C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

     (D)    without observance of procedure required by law;

     (E)    unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

     (F)    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

The MMS has arbitrarily and capriciously denied Plaintiff's repeated requests to depose specific MMS agents. These depositions are needed - not to explore or even question MMS policies or practices - but to ascertain whether an unbiased individual, such as an MMS agent, reasonably believed David Law was represented by counsel when the MMS agent interviewed David Law.

To further delay or deny Plaintiff's request impinges upon David Law's constitutional right to a fair trial in the civil state court matter. See Latiolais v. Whitley, 93 F.3d 205 (5th Cir. 1996); Lemons v. Skidmore, 985 F.2d 354, 357 (7th Cir.1993); see also Bailey v. Systems Innovation, Inc., 852 F.2d 93, 98 (3d Cir.1988).

This Complaint is brought before this Honorable Court rather than in a motion in the State Court Suit because a state court lacks jurisdiction to compel a federal employee to testify concerning information acquired during the course of his official duties. Kasi v. Angelone, 200 F.Supp.2d 585, 599 (E.D. Va. 2002) citing Smith v. Cromer, 159 F.3d 875, 879 (4th Cir. 1998) citing Boron Oil Co. v. Downie, 873 F.2d 67, 69-71 (4th Cir. 1989).

While TEX. R. CIV. P. 176.6(b) does require a governmental agency to designate one or more persons to testify on its behalf in response to a subpoena commanding testimony (if the matters on which the examination is requested are described with reasonable particularity), that requirement is limited to governmental agencies under Texas state court jurisdiction. See TEX. R. CIV. P. 176.6(b); see also United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951).

A federal court, such as the Southern District of Texas, is not so restricted and can issue a valid order compelling a non-party federal agent to testify in a civil matter originating in state court. Exxon Shipping Co. v. United States Department of Interior, 34 F.3d 774 (9th Cir. 1994). In Exxon Shipping, the 9th Circuit held that the Federal Housekeeping Statute (5 U.S.C. § 301) does not, by its own force, authorize federal agency heads to withhold evidence sought under a valid **federal** court subpoena. Id. at 777 [emphasis added].

-10-

In its correspondence dated September 11, 2009, the MMS denied Law's requests to allow Dykes (or any other investigating agents who were present during the interrogation of David Law) to testify via a deposition based on the premise that the information sought was "available from your client who attended these meetings and therefore, you are able to obtain the requested information from a source other than the MMS officials."

This position is flawed for at least four reasons. First, it does not address the situation properly. The information may in fact be available from David Law himself, but David Law is not a disinterested witness. The relevant MMS agents were the only disinterested witnesses present during the interrogation. Second, the MMS denial does not take into account the vital importance to the trier of fact that is contained in a disinterested witness's testimony. Kiva Corporation v. Baker Oil Tools, Inc., 412 F.2d 546 (5th Cir. 1969); Carter v. Rice, 398 F.Supp. 474, 477 (N.D. Tex. 1975). Third, it overlooks the grave nature of the issues which Law has asserted in the State Court Suit: abuse of the attorney-client relationship, abuse of legal proceedings, liability alleged against an individual in the amount of over $2,575,000. Finally, though perhaps most important, it overlooks the threat to the MMS and its investigative role posed by the deception that occurred during the MMS investigation. Without disclosure of the representations given to these MMS officers, the

-11-

unscrupulous will be free to make misrepresentations again in the future without fear of repercussions and without fear that the misrepresentations will be discovered by State and federal courts that were constructed to provide checks and balances for exactly that kind of misconduct.  To be sure, the MMS will be better served by these depositions to ensure it is not subjected to deception or other misconduct of the unscrupulous in the future, and the MMS would be ill served by a procedure that ensures that it will be left in the dark as to such misconduct.

The September 11, 2009 MMS correspondence to counsel also stated that providing the requested testimony would "impair MMS' ability to: (1) conduct official business unimpeded; (2) maintain impartiality in conducting our business; (3) minimize the possibility that we will become involved in issues that are not related to our missions or programs; (4) avoid spending public employee's time for private purposes; (5) avoid the negative cumulative effect of granting similar requests; and (6) avoid undue burden."

These arguments are taken directly from the Code of Federal Regulations (43 C.F.R. § 2.88), which  requires the Office of the Secretary of the Interior to consider the following when a <u>Touhy</u> request is received:

[T]he appropriate Department official will consider:

(a)      Your ability to obtain the testimony or records from another source;

    (b)    The appropriateness of the employee testimony and record production under the relevant regulations of procedure and substantive law, including the FOIA or the Privacy Act; and

    (c)    Our ability to:

        (1)    Conduct our official business unimpeded;

        (2)    Maintain impartiality in conducting our business;

        (3)    Minimize the possibility that we will become involved in issues that are not related to our mission or programs;

        (4)    Avoid spending public employee's time for private purposes;

        (5)    Avoid the negative cumulative effect of granting similar requests;

        (6)    Ensure that privileged or protected matters remain confidential; and

        (7)    Avoid undue burden on us.

There has been no discussion as to the location or time involved in these depositions, all of which can be conducted at a time and place that is convenient for the witnesses. To be sure, the federal government attorney has given no proper basis for denying the Galveston state court judiciary of vital factual evidence.

In fact, the paperwork and other demands imposed on this Court as a result of the federal attorneys' refusal to even entertain an agreed procedure for these vital depositions likely presents a larger interference with the operations of the federal

-13-

government than would the simple depositions of these witnesses, not to mention the delays and interference such refusal has created in the Galveston court's administration of justice in the State Court Suit.

Law submits that the Department of Interior has abused its discretion.  The United States Code includes provisions for the department head of the Department of Interior (and other agencies) to prescribe regulations for the government of the department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. 5 U.S.C. § 301.  However, that section does not authorize withholding information from the public or limiting the availability of records to the public. Id.; Harvey Aluminum v. NLRB, 335 F.2d 749, 755 (9th Cir. 1964); NLRB v. Capitol Fish Co., 294 F.2d 868, 875 (5th Cir. 1961).

In NLRB v. Capitol Fish Co., the Fifth Circuit stated"when a party has filed a request for evidence or testimony and the request can be properly denied only if the evidence or testimony is privileged, the question of privilege is as squarely raised by an unexplained refusal to comply as by an express claim of privilege, and the court must decide the question." Id. at 875.  Although the government was a party to the underlying action in NLRB while it is not a party to the State Court Suit, that does not change the fact that 5 U.S.C. § 301 does not create a privilege of non-disclosure.

-14-

Exxon Shipping Co. v. United States Department of Interior, 34 F.3d 774, 777 (FN5) (9th Cir. 1994). In Exxon Shipping, the government was not a party to the underlying suit. Id. Further, the Ninth Circuit quoted the U.S. Supreme Court in saying "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." Id.(quoting United States v. Reynolds, 345 U.S. 1, 9-10 (1953)).

Accordingly, the refusal to permit these requested depositions conflicts with existing court precedent. To be sure, federal courts have confirmed that there exists no absolute bar to obtaining evidence from federal employees, and in fact federal courts have the authority to compel such evidence without fear of caprice or veto power by executive officers.

WHEREFORE, PREMISES CONSIDERED, Plaintiff David Law prays that this Court require the Department of Interior, Minerals Management Service, answer this Complaint and that, upon final trial in this action, judgment be entered in favor of David Law and the deposition testimony of the above named MMS agents be compelled to occur at an immediate time and at a place convenient to the Plaintiff, and for such other and further relief, both at law and equity, to which he is entitled.

Respectfully submitted,


By:  /s/ John Ribarits
        JOHN M. RIBARITS
        Attorney-In-Charge
        Texas Bar No. 00792302
        Federal Bar No. 19319
        KRIS STOCKBERGER
        Texas Bar No. 24028015
        Federal Bar No. 30834
        ERIC J. ALLEN
        Texas Bar No. 24071064
        Federal Bar No. 1056804
        24 Greenway Plaza, Suite 2050
        Houston, Texas 77046
        Telephone: (713)355-6062
        Facsimile: (713)572-9129
        **COUNSEL FOR DAVID LAW**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has this date been served on the following counsel of record by certified mail, facsimile transmission, or regular mail as follows:

Houston, Texas, this _____ day of April, 2010.

Mr. Eric Holder
United States Attorney General
U.S. Dept. of Justice
10th and Constitutional Ave., N.W.
Washington, D.C. 20530

Mr. Jose Angel Moreno
United States Attorney
P.O Box 61129
Houston, Texas 77208

Ms. Dara Less
Assistant United States Attorney
919 Milam Street #1500
Houston, Texas 77002

Ms. Sylvia Murphy
Ms. Phyllis Leslie
Office of the Solicitor
1849 C Street NW
Mail Stop 4230
Washington, DC 20240

   /s/ Kristopher M. Stockberger
Kristopher M. Stockberger